# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:24-CR-00180-JAG-SCR

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATIONS** |
| RUSTY JOSEPH WHITTAKER, | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Defendant's "First Motion to Suppress" (the "Motion") (Doc. No. 29) and supporting exhibits. (Doc. Nos. 29-1, 29-2, & 29-3). The United States filed a response in opposition on July 21, 2025 (Doc. No. 39), and Defendant filed a reply on July 28, 2025. (Doc. No. 46).

This Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and the Motion is now ripe for consideration. The undersigned held a hearing on the Motion on July 31, 2025.

Having fully considered the record, applicable law, and the arguments of counsel, the undersigned respectfully recommends that Defendant's First Motion to Suppress be **DENIED**, as discussed below.

### I.  BACKGROUND[1]

---

[1] The background information stated herein is based on Defendant's submissions in support of his Motion. This includes, but is not limited to: (1) "Application and Affidavit for Order Authorizing Installation and Monitoring of a Pen Register and/or Trap and Trace Device, GPS and Geo-location Pursuant to N.C.G.S. §§ 15A-260-264, and for the Production of Records and Other Information Pursuant to 18 U.S.C. § 2703(d)", (Doc. No. 29-1)); (2) the Superior Court's Order on the same (Doc. No. 29-2); and (3) AOC-CR-119 Form State of North Carolina Search Warrant. "[T]hese facts have not been proven to a jury and are provided here merely as a summary of the documentary evidence before the Court at this stage of Defendant's case" for purposes of considering the Motion. United States v. Houdersheldt, No. 3:19-00239, 2020 WL 1169757, at *1 n.1 (S.D. W. Va. Mar. 10, 2020).

A. **Procedural Background**

On September 17, 2024, Defendant Rusty Joseph Whittaker ("Defendant" or "Whittaker") was indicted in the Western District of North Carolina on three counts: Enticement of a Minor in violation of 18 U.S.C. § 2422(b), Production of Child Pornography in violation of 18 U.S.C. § 2251(a) & (e), and Travel with Intent to Engage in Illicit Sexual Contact in violation of 18 U.S.C. § 2423(b). (Doc. No. 3). On July 3, 2025, Defendant moved the Court to suppress "all records and information received by law enforcement as a result of the defective 'Application, Affidavit and Order Authorizing Installation and Monitoring of a Pen Register and/or Trap and Trace Device, GPS and Geo-location Pursuant to N.C.G.S. [§§] 15A-260-264, and for the Production of Records and Other Information Pursuant to 18 U.S.C. [§] 2703(d)'" issued by Mecklenburg County Superior Court Judge Louis A. Trosch, Jr. on May 26, 2023. (Doc. No. 29 at 1, 3).

B. **Factual Background**

On May 24, 2023, Charlotte-Mecklenburg Police Department ("CMPD") detectives obtained an arrest warrant for Whittaker. (Doc. No. 29 at 1-2 ¶ 1).[2] That arrest warrant was issued following alleged events occurring on May 20, 2023, that involved alleged violations of North Carolina law for First Degree Sexual Exploitation of a Minor, Solicitation of a Minor for Prostitution, Statutory Rape of a Person 15 or Younger, Statutory Sex Offense with a Person 15 or Younger, and two counts of Indecent Liberties with a Child. Id.

Two days later on May 26, 2023, a CMPD Detective ("Detective") submitted to the Superior Court in Mecklenburg County, North Carolina an "Application and Affidavit for Order Authorizing Installation and Monitoring of a Pen Register and/or Trap and Trace Device, GPS and Geo-Location Pursuant to N.C.G.S. §§ 15A-260-264, and for the Production of Records and Other Information Pursuant to 18 U.S.C. §2703(d)" (the "Application"). (Doc. No. 29-1 at 1, 3). The

---

[2] Defendant has not challenged the arrest warrant.

Detective noted that "[e]ven though the standard for production under 18 USC [§] 2703 is 'reasonable grounds,' this [A]pplication sets forth the higher standard of probable cause for the release of the information being sought." Id. at 1, n.1. In support, the Application stated, among other things:

1. That there is probable cause to believe that a felony, or a Class A1 or Class 1 misdemeanor, has been committed. The nature of the criminal offense(s) is as follows: 1st DEGREE SEXUAL EXPLOITATION OF MINOR, STATUTORY RAPE OF CHILD BY ADULT, STATUTORY SEX OFF WITH CHILD <=15, INDECENT LIBERITES [sic] WITH CHILD, SOLICITATION PROSTITUION [sic] MINOR, which is in violation of North Carolina General Statute(s) 14-190.16, 14-27.23, 14-27.30(A), 14-202.1, 14-205,1 and is/are classified as a predicate offense(s) for the installation and monitoring of a pen register and/or trap and trace device(s) in accordance with N.C.G.S. § 15A-263(a)(1).

2. That RUSTY WHITTAKER is . . . the subject of an ongoing criminal investigation being conducted by the Charlotte-Mecklenburg Police Department (CMPD) and there is probable cause to believe that RUSTY WHITTAKER committed the offense.

   . . .

5. That there is probable cause to believe that:

   On May 20, 2023, Charlotte-Mecklenburg Police Department Officers responded to the Hampton Inn and Suites located at 7911 W WT Harris Boulevard in Charlotte, North Carolina. The victim's family reported that there [sic] 15-year-old daughter went to the hotel to have sex with an adult. CMPD Sexual Assault Detectives identified RUSTY WHITTAKER, W/M [Redacted] as the suspect and obtained warrants on him for 1st DEGREE SEXUAL EXPLOITATION OF MINOR, STATUTORY RAPE OF CHILD BY ADULT, STATUTORY SEX OFF WITH CHILD <=15, INDECENT LIBERITES [sic] WITH CHILD, SOLICITATION PROSTITUION [sic] MINOR. WHITTAKER provided the TARGET TELEPHONE, 512-[REDACTED] to the hotel on May 20, 2023. Additionally, the TARGET TELEPHONE, 512-[REDACTED] is linked to WHITTAKER. in law enforcement databases. WHITTAKER appears to be from Austin, Texas but his exact location is unknown at this time.
   Based on the facts stated above, I believe Rusty Whittaker is utilizing the aforementioned cellular telephone 512-[REDACTED]. . . . The authorization of this court order would allow law enforcement to. . . show the general geographic location of the target device before, during, or after the commission of the crime. I am aware that obtaining the historical cell phone call detail and

specialized location records could also prove to be fruitful. . . . The authorization of this court order would also allow law enforcement the ability to monitor Rusty Whittaker's locations which will aid law enforcement in tracking Rusty Whittaker's movements while law enforcement is actively investigating Rusty Whittaker. . . .

Id. at 1-3.

Specifically, the Application requested:

> a. Detailed subscriber records/information to include but not limited to names, addresses, telephone numbers, e-mail addresses, activation/deactivation dates, dates of service, and types of services utilized;
> b. Detailed information on purchase and/or payment to include but not limited to purchaser, credit card number or other means of payment, and location of purchase;
> c. Device and network identifiers to include but not limited to electronic serial number (ESN), International Mobile Equipment Identity (IMEI), International Mobile Subscriber Identity (IMSI), Mobile Subscriber Identifier (MSID), Mobile Equipment Identifier (MEID), Subscriber Permanent Identifier (SUPI), Permanent Equipment Identifier (PEI), Generic Public Subscription Identifier (GPSI), Mobile Identification Number (MIN), Mobile Dialed Number (MDN), Media Access Control (MAC) addresses, Internet Protocol (IP) Addresses and Ports, and make/model of the device;
> d. Information pertaining to other devices "twinned" or otherwise linked to and/or paired with the device;
> e. Home Location Register (HLR) and Visitor Location Register (VLR) records;
> f. Historical and prospective call detail records with cell site information to include but not limited to telephone call records, VoLTE records, direct connect records, text message/SMS/MMS records, data records, as well as the corresponding cellular tower/site/sector/switch information for each transaction's origination, handover/handoff, and termination;
> g. Historical and prospective Data IP Session/Packet Data records (including Sprint Vision information), internet history, web browsing history;
> h. Historical and prospective Global Positioning System (GPS), geo-location service, triangulation, trilateration, timing advance, and Location Based Service (LBS) data and information;
> i. AT&T MobileLocate Data;
> j. AT&T Time on Tower Reports;
> k. Historical and prospective AT&T NELOS and LOCDBOR (Location Database of Record) Reports;
> 1. Sprint L-Site GPS Data;
> m. Historical and prospective Sprint PCMD (Per Call Measurement Data) Reports;
> n. T-Mobile E-911 Data;

> o. Historical and prospective T-Mobile TrueCall and/or Timing Advance Reports;
> p. Verizon PLU (Precision Location Updates) or LBS (Location Based Service) Data
> q. Historical and prospective Verizon RTT (Range To Tower/Real-Time Tool) Reports;
> r. Historical and prospective US Cellular TrueCall Reports;
> s. And any other relevant information pertaining to the TARGET TELEPHONE(s).

Id. at 5-6. In addition, the Application stated there is "probable cause" for "historical records" for a period of 30 days prior including "[h]istorical call detail records without cell site information to include but not limited to telephone call records, VoLTE records, direct connect records, text message/SMS/MMS records, data records." Id. at 6-7.

The same day a Mecklenburg County Superior Court Judge issued an "Order Authorizing Installation and Monitoring of a Pen Register and/or a Trap and Trace Device, GPS and Geo-location Pursuant to N.C.G.S. §[§] 15A-260-264, and for the Production of Records and Other Information Pursuant to 18 U.S.C. § 2703(d), and U.S.C. § 3122-3127[,]" (the "May 26 Order"). (Doc. No. 29-2). In the May 26 Order, the Judge granted the Detective's request in full, including for a Pen Register and/or Trap ("PRTT"), an order under § 2703(d) ("2703(d) order"), and for GPS and Geo-location records (commonly referred to as cell site location information or "CSLI") for prospective and historical location data. Id. The Judge noted seven different times that he found probable cause. Id. In relevant part, the Judge found probable cause that:

> RUSTY WHITTAKER is the subject of a criminal investigation being conducted by Charlotte-Mecklenburg Police Department[ ](CMPD), that RUSTY WHITTAKER is currently a fugitive from justice and/or is the subject of an ongoing criminal investigation and there is probable cause to believe RUSTY WHITTAKER has committed, is committing, and/or will continue to commit in the future the crime(s) of 1st DEGREE SEXUAL EXPLOITATION OF MINOR, STATUTORY RAPE OF CHILD BY ADULT, STATUTORY SEX OFF WITH CHILD <=15, INDECENT LIBERITES [sic] WITH CHILD, SOLICITATION PROSTITUION [sic] MINOR. . .
>
> . . . .

> Rusty Whittaker is using the TARGET TELEPHONE(s), issued by any and all providers of electronic communications service pursuant to 18 USC § 2510 (15) and N.C.G.S. § 15A-286(9) . . . to further and facilitate the crime(s) of 1st DEGREE SEXUAL EXPLOITATION OF MINOR, STATUTORY RAPE OF CHILD BY ADULT, STATUTORY SEX OFF WITH CHILD <=15, INDECENT LIBERITES [sic] WITH CHILD SOLICITATION PROSTITUION [sic] MINOR and/or to maintain his status as a fugitive from justice.

(Doc. No. 29-2 at 1-2).

According to Defendant's Motion, the electronic communications service provider "produced extensive data and information pursuant to the [May 26] Order, including historical geolocation and GPS information[,]" which Defendant now seeks to suppress. (Doc. No. 29 at 3 ¶ 7).

## II.    DISCUSSION

The Fourth Amendment to the U.S. Constitution safeguards the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and requires that no warrants shall issue "but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. Amend. IV; see also United States v. Lull, 824 F.3d 109, 115 (4th Cir. 2016). "Ordinarily, when a search violates the Fourth Amendment, the fruits thereof are inadmissible under the exclusionary rule, 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" United States v. Doyle, 650 F.3d 460, 466-67 (4th Cir. 2011) (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)).

According to the Motion, Defendant seeks to suppress "all records and information received by law enforcement" based on what Defendant labels as a "defective Application, Affidavit and Order." (Doc. No. 29 at 1). As the Court noted at the hearing, PRTT requests are subject to lower standards of proof than search warrants. See Smith v. Maryland, 442 U.S. 735, 745-46 (1979) (holding that use of pen register was not a "search" for Fourth Amendment

purposes); 27A Strong's N.C. Index 4th Telecommunications and Broadcasting § 16 (Under North Carolina law, a pen register application must (1) "identify the law enforcement officer and the law enforcement agency conducting the investigation," and (2) "certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the law enforcement agency[,]" and "they are exempt from the general requirement of a warrant. . .") (citing N.C. Gen. Stat. § 15A-262(a)). At the hearing, Defendant clarified that his Motion seeks only the suppression of the geolocation and GPS information, or CSLI, produced in response to the May 26 Order arguing the data was seized as the result of an unlawful search in violation of the Fourth Amendment and the Supreme Court's decision in Carpenter v. United States, 585 U.S. 296 (2018).

In Carpenter, the Supreme Court held that a request for seven days of defendant's historical CSLI from his wireless carrier was a search for which "the Government must generally obtain a warrant supported by probable cause before acquiring such records." 585 U.S. at 316. The Court declined to extend its holdings in Smith and Miller to the collection of CSLI given "the unique nature of cell phone location records" which did "not fit neatly under existing precedents." Id. at 306, 309 (citing Smith, 442 U.S. at 742 and United States v. Miller, 425 U.S. 435, 443 (1976) (applying the third-party doctrine to bank records)). The Court cautioned that its opinion was a "narrow one" and did "not disturb the application of Smith and Miller." Id. at 316. The Court further declined to "express a view on matters not before" including whether "real-time CSLI" may require a warrant. Id.; see also United States v. Chatrie, 136 F.4th 100, 134-35 (4th Cir. 2025) (Richardson, J., concurring) (en banc) (discussing Carpenter and its application to CSLI). Here, Defendant advances several arguments under Carpenter supporting his suppression arguments. The Court will address each in turn.

Defendant asserts that instead of seeking a search warrant as required by Carpenter, CMPD sought a court order relying on N.C.G.S. §§ 15A-260 through 264 and the federal Stored Communications Act ("SCA"), 18 U.S.C. § 2703(d). Defendant points out that the Detective did not utilize the North Carolina search warrant form. Defendant further submits that the North Carolina statute does not authorize retrieval of location data, and therefore, the May 26 Order is deficient. The Court is unpersuaded by these arguments.

The mere fact that the May 26 Order was labeled as an "order" rather than a "warrant" is not dispositive. United States v. Cooper, No. 22-1510, 2023 WL 3336645, at *4 (3d Cir. May 10, 2023) (finding that labeling authorizations as "orders" instead of "warrants" did not render them in violation of Carpenter because the "orders" had the three essential qualities of a warrant) (citing Dalia v. United States, 441 U.S. 238, 255 (1979)). A valid warrant must include: (1) approval by a neutral, disinterested magistrate judge; (2) a finding of probable cause; and (3) a particularized description of the items to be seized and places to be searched. Dalia, 441 U.S. at 255.

The May 26 Order was entered by a neutral judge, which Defendant does not contest. The Judge found probable cause existed, and both the Application and May 26 Order contained a particularized description of the target phone number and information sought. "Probable cause" to search generally requires "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Generally, a finding by a judge on probable cause is afforded great deference. United States v. Orozco, 41 F.4th 403, 407 (4th Cir. 2022). Determinations of probable cause should be left alone unless there is no "substantial evidence in the record supporting the . . . decision to issue the warrant." Id.

In the instant case, the undersigned finds probable cause existed to support a valid warrant based on the following: the Detective's sworn Application explained that the Minor Victim's

family reported that she went to the hotel to have sex with an adult.[3] (Doc. No. 29-1 at 2). Detectives identified Whittaker as the suspect and obtained warrants on him. Id. According to the Application, Whittaker provided the target telephone number of 512-[redacted] to the hotel, and law enforcement databases linked the target telephone number of 512-[redacted] to Whittaker. Id. The Detective noted the Application set forth probable cause, rather than just "reasonable grounds" for the release of the information being sought. Id. at 1, n. 1. The Detective also itemized the information sought, including historical location information, id. at 5-7, and asserted that such information would aid the investigation by giving them ability to monitor Whittaker's locations because he "appears to be from Austin, Texas, but his exact location is unknown at this time."[4] Id. at 2-3, ¶¶ 5-6.

Based on the Application, the Judge found that there was probable cause to believe Whittaker committed certain crimes and that he was using the target telephone with assigned number 512-[redacted]. (Doc. No. 29-2 at 1-2). The Judge authorized the Detective's request, again itemizing both the phone number and detailing the information sought.[5] (Doc. No. 29-2 at 7). Further, the Judge specified the timeframe for the "period of time ranging from 30 days prior to the date this order is signed and expiring 30 days from such date." Id.

The undersigned concludes this is sufficient to support a finding of probable cause, and a particularized description of the items to be seized and places to be searched. See Dalia, 441 U.S.

---

[3] The undersigned expressly rejects Defendant's argument that there is not a sufficient probable cause because the family— and not the alleged Minor Victim— made these claims. (Doc. No. 29 at 11). This argument is wholly unavailing that a minor child, who was just the victim of an alleged crime, would somehow be required to lodge the claims, instead of the parents or guardians, in order to support a probable cause finding.

[4] The undersigned also finds Defendant's argument unavailing that the May 26 Order is deficient because the Detective indicated the information would allow law enforcement to identify other co-conspirators when no information supported that any co-conspirators existed. (Doc. No. 29 at 12). The undersigned observes it was an early stage of the investigation, and the Application still contained all three criteria for a valid warrant, as discussed herein.

[5] The undersigned observes that many of the requested items are expressly authorized under 18 U.S.C. § 2703 including name, address, telephone connection records, or records of session times and durations, length of service (including start date) and types of service utilized, telephone or instrument number or identity, including any temporarily assigned network address, and means and source of payment for such service. 18 U.S.C. § 2703. The undersigned has separately analyzed requested CSLI records under Carpenter.

at 255. Moreover, federal and state courts have held that similar CSLI "orders" are sufficient under Carpenter as long as they would otherwise qualify as a warrant under the Fourth Amendment. See United States v. Harper, No. 7:20-CR-131-1FL, 2023 WL 3432186, at *7-8 (E.D.N.C. Mar. 10, 2023), report and recommendation adopted, No. 7:20-CR-131-FL-1, 2023 WL 2967886 (E.D.N.C. Apr. 17, 2023) ("The PRTT and GPS Orders comply with the Fourth Amendment's search warrant requirements."); United States v. Evans, No. 5:17-CR-39-FL-1, 2018 WL 7051095, at *4 (E.D.N.C. Dec. 20, 2018), report and recommendation adopted, No. 5:17-CR-39-FL-1, 2019 WL 238033 (E.D.N.C. Jan. 16, 2019) ("Because the April order meets the constitutional requirements for a search warrant, Defendant's Fourth Amendment rights were not violated by the search of his phone records despite the fact that the order was issued under the SCA."); State v. Gore, 846 S.E.2d 295, 299 (N.C. Ct. App. 2020) ("Although this Court is, as a general matter, bound by Carpenter, we hold the trial court did not err in denying defendant's motion to suppress because the application to obtain defendant's CSLI contains all the information necessary from which the trial court could have issued a warrant supported by probable cause, and in fact, the trial court in its order specifically found that probable cause existed to obtain this information."); State v. Cooper, 896 S.E.2d 761 (N.C. Ct. App. 2024) (unpublished table decision). ("[T]he trial court properly concluded the CSLI Order was 'supported by probable cause.'").

Considering all of this, the undersigned concludes the May 26 Order did not violate Carpenter and included the necessary requirements of a valid search warrant.

But, even if the May 26 Order did not qualify as a search warrant, the good faith exception would still apply.[6] "Evidence obtained in violation of the Fourth Amendment, of course, is

---

[6] The Government also argues that the "inevitable discovery doctrine applies because law enforcement would have inevitably discovered this evidence through an application labeled as a 'warrant,' should that be required." (Doc. No. 39 at 13-14). Because the Court finds that the May 26 Order qualifies as a search warrant and even if it did not, the good faith exception would apply, the undersigned need not reach this argument.

generally subject to suppression under the exclusionary rule . . . ." United States v. Perez, 393 F.3d 457, 460 (4th Cir. 2004). However, the good faith exception provides that when the police act with an objectively reasonable good-faith belief that their conduct is lawful, the exclusionary rule should not apply. See Davis v. United States, 564 U.S. 229, 247 (2011) (internal citation omitted); see also United States v. Hargett, 797 F. App'x. 765, 767 (4th Cir. 2020).

Defendant argues that the Application and May 26 Order were so lacking in probable cause and "misleading and confusing" that the warrant cannot be saved by the good faith exception. (Doc. No. 29 at 13-16). The undersigned cannot agree. There are four circumstances in which the good faith exception will not apply to a warrant:

> (1) If the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) if the issuing magistrate wholly abandoned his judicial role ... ; (3) if the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) if under the circumstances of the case the warrant is so facially deficient— i.e., in failing to particularize the place to be searched or the things to be seized— that the executing officers cannot reasonably presume it to be valid.

Chatrie, 136 F.4th at 106 (Diaz, C.J., concurring) (en banc); see also United States v. Glass, No. 5:21-CR-00060-KDB-DSC, 2023 WL 2844365, at *8 (W.D.N.C. Apr. 7, 2023) (citing United States v. Wellman, 663 F.3d 224, 228-29 (4th Cir. 2011)).

None of these circumstances apply here. As explained above, the Court has already found in consideration of the facts in the Application and May 26 Order, probable cause existed to support a valid warrant. The undersigned notes that the Detective specifically recognized that he was not simply setting forth "reasonable grounds" but believed "probable cause" existed to support his Application to the Judge. The Judge agreed that probable cause existed. Once again, when determining "'whether the good faith exception applies[,]'" the Court must "accord 'great deference' to a magistrate's determination of probable cause, given that '[r]easonable minds

frequently may differ on the question whether a particular affidavit establishes probable cause.'" United States v. Burton, 756 F. App'x 295, 303 (4th Cir. 2018) (quoting United States v. Leon, 468 U.S. 897, 914 (1984)).

It certainly cannot be said that the Judge "wholly abandoned his judicial role" or that probable cause is "so lacking" as to "render official belief in its existence entirely unreasonable" where an alleged victim's family reports that their minor child went to a specified hotel to have sex with an adult; detectives identified Whittaker as the suspect and obtained warrants on him; Whittaker provided the target telephone number of 512-[redacted] to the hotel; and law enforcement databases linked the target telephone number of 512-[redacted] to Whittaker. Moreover, the undersigned has already found that the label "order" instead of "warrant" does not render it facially deficient. In addition, both the Application and May 26 Order itemized the 512-[redacted] number along with the specific information sought. In other words, they do not fail to particularize the place to be searched or the things to be seized.

Defendant also claims the Application was misleading or false because the Application authorized law enforcement agencies to receive the materials who were not ultimately involved in the investigation. The Court will not speculate as to why the agencies were included, but their inclusion does not change the substantive facts or the Judge's determination of probable cause.

Based on all of this, the undersigned concludes that the Detective acted with an objective reasonable good-faith belief that his conduct was lawful, and the good faith exception applies.

### III.     RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendant's "First Motion to Suppress" (Doc. No. 29) be **DENIED.**

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Criminal Procedure 59, written objections to the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Fed. R. Crim. P. 59(b); Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id.; United States v. Midgette, 478 F.3d 616, 621-22 (4th Cir. 2007). "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting Midgette, 478 F.3d at 622).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable John A. Gibney, Jr.

**SO RECOMMENDED.**          Signed: August 6, 2025

_____
Susan C. Rodriguez
United States Magistrate Judge